**WIRTZ LAW APC**
Richard M. Wirtz (SBN 137812)
rwirtz@wirtzlaw.com
Amy R. Rotman (SBN 286128)
arotman@wirtzlaw.com
4370 La Jolla Village Drive, Suite 800
San Diego, CA 92122
Telephone: (858) 259-5009
Facsimile: (858) 259-6008
Email: eservice@wirtzlaw.com

Attorneys for Plaintiff AMALFI VIAFARA

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMALFI VIAFARA,<br><br>           Plaintiff,<br><br>    vs.<br><br>GENERAL MOTORS, LLC, a Delaware Limited Liability Company; and RUBIDOUX MOTOR CO., a California Corporation dba DUTTON MOTOR COMPANY,<br><br>           Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>1. **VIOLATION OF SONG-BEVERLY ACT - BREACH OF EXPRESS WARRANTY**<br>2. **VIOLATION OF SONG-BEVERLY ACT - BREACH OF IMPLIED WARRANTY**<br>3. **VIOLATION OF SONG-BEVERLY ACT – SECTION 1793.2**<br>4. **NEGLIGENT REPAIR**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff AMALFI VIAFARA ("Plaintiff") alleges as follows against Defendants GENERAL MOTORS, LLC, a Delaware Corporation ("GM"); and RUBIDOUX MOTOR CO., a California Corporation dba DUTTON MOTOR COMPANY ("DUTTON"); on information and belief, formed after an inquiry reasonable under the circumstances:

## JURISDICTION

1. The basis for federal court jurisdiction is diversity of citizenship per 28 U.S.C.A. § 1332.

2. Plaintiff AMALFI VIAFARA is an individual residing in the City of Lake Elsinore, County of Riverside, and State of California.

3. Defendant GM is and at all relevant times was a Delaware Limited Liability Company with its principal place of business in the State of Michigan, authorized to do business and conducting business throughout the State of California directly or via authorized sales agents and authorized repair facilities.

4. Defendant DUTTON is and at all relevant times was a California Corporation registered to do business in the State of California with its principal place of business in the City of Riverside, County of Riverside, and State of California. At all relevant times, Defendant DUTTON was and is the authorized repair facility of Defendant GM.

5. The amount in controversy is more than $75,000.00, not inclusive of interest and costs of court.

## GENERAL ALLEGATIONS

6. These causes of action arise out of the warranty and repair obligations of GM in connection with a vehicle purchased by Plaintiff and for which GM issued a written warranty, and DUTTON's breach of its duty to Plaintiff related to the standard of care for repair, storage, and notation of work performed. The claim against DUTTON is a discrete tort action, not based on any contract between Plaintiff and GM, including but not limited to, the purchase or warranty contracts.

Plaintiff's claims are not dependent upon, founded in, reliant upon, or inextricably intertwined with any term in the purchase contract.

7. All acts of corporate employees as alleged were authorized or ratified by an officer, director, or managing agent of the corporate employer.

8. Each Defendant, whether actually or fictitiously named herein, was the principal, agent (actual or ostensible), or employee of each other Defendant, and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth by reason of which each Defendant is liable to Plaintiff for the relief prayed for herein.

9. On April 19, 2019, Plaintiff purchased a new 2019 GMC Acadia, VIN: 1GKKNPLS9KZ297594 ("Vehicle") from Temecula Valley Buick GMC ("TEMECULA") in Temecula, California. The Vehicle's odometer at purchase read 2,071 miles. The cash price of the Vehicle was $34,000.00. Plaintiff purchased an optional service contract Smart Autocare for $3,430.00, and an optional debt cancellation agreement for $895.00. Plaintiff paid $10,000.00 as a down payment and financed $31,547.34. Including the finance charges over the maturity of the loan and the total down payment, the total sales price of the Vehicle was $45,780.40.

10. GM expressly warranted that the Vehicle would be free from defects in materials, nonconformities, or workmanship during the applicable warranty period and to the extent the Vehicle had defects, GM would repair the defects. A true and correct copy of relevant portions of GM's express warranty is attached as **Exhibit 1**.

11. GM impliedly warranted that the Vehicle would be of the same quality as similar vehicles sold in the trade and that the Vehicle would be fit for the ordinary purposes for which similar vehicles are used.

12. The Vehicle was delivered to Plaintiff with serious defects and nonconformities under the warranty and developed other serious defects and nonconformities under the warranty, including but not limited to electrical defects.

13. Plaintiff hereby revokes acceptance of the sales contract.

14. Pursuant to the Song-Beverly Consumer Warranty Act ("Act"), Civil Code sections 1790 *et seq.*, the Vehicle is subject to the Act and was used for covered purposes under the Act.

15. Plaintiff is a "buyer" under the Act.

16. Defendant GM is a "manufacturer" and/or "distributor" under the Act.

17. At all relevant times, Defendant DUTTON and TEMECULA were and are authorized repair facilities of Defendant GM.

## PLAINTIFF'S EXPERIENCES

18. On July 6, 2021, Plaintiff presented the Vehicle to Defendant GM's authorized repair facility TEMECULA for repair. The repair order for this visit is number 93941. Plaintiff reported that the sunroof latch would not close. The technicians verified this concern and found that the latch had separated from the housing. The technicians replaced the rear sunroof sunshade. The technicians also checked the tire pressures and completed a multipoint inspection. The Vehicle was at the repair facility for one day and had 4,865 miles on the odometer at the time of presentation.

19. On July 20, 2021, Plaintiff presented the Vehicle to Defendant GM's authorized repair facility TEMECULA for repair. The repair order for this visit is number 94521. Plaintiff reported that the sunroof latch would not close. The technicians verified this concern and found that the latch had separated from the housing. The technicians replaced the rear sunroof sunshade again. The technicians also checked the tire pressures and completed a multipoint inspection. The Vehicle was at the repair facility for one day and had 6,280 miles on the odometer at the time of presentation.

20. On August 3, 2021, Plaintiff presented the Vehicle to Defendant GM's authorized repair facility TEMECULA for repair. The repair order for this visit is number 95050. Plaintiff reported that the sunroof latch would not close. The technicians verified this concern and found that the latch had separated from the

housing. The technicians replaced the rear sunroof sunshade for a third time in less than a month. The technicians also checked the tire pressures and completed a multipoint inspection. The Vehicle was at the repair facility for two days and had 7,167 miles on the odometer at the time of presentation.

21. On September 23, 2021, Plaintiff presented the Vehicle to Defendant GM's authorized repair facility TEMECULA for repair. The repair order for this visit is number 96802. Plaintiff reported that the sunroof opened by itself when entering the Vehicle, despite never touching the sunroof. The technicians ordered parts and attempted no repairs. The technicians also checked the tire pressures, completed a multipoint inspection, and performed a lube, oil, and filter service. The Vehicle was at the repair facility for one day and had 8,448 miles on the odometer at the time of presentation.

22. On September 29, 2021, Plaintiff presented the Vehicle to Defendant GM's authorized repair facility TEMECULA for repair. The repair order for this visit is number 96964. Plaintiff reported that the sunroof latch would not close. The technicians verified this concern and found that the latch had separated from the housing. The technicians replaced the rear sunroof sunshade and retainer. The technicians also checked the tire pressures and completed a multipoint inspection. The Vehicle was at the repair facility for one day and had 8,563 miles on the odometer at the time of presentation.

23. On January 6, 2022, Plaintiff presented the Vehicle to Defendant GM's authorized repair facility DUTTON for repair. The repair order for this visit is number 6152781. Plaintiff reported that the second-row sunshade would not stay closed. The technicians verified this concern and found the retainer to be defective. The technicians replaced the retainer. The technicians also checked the tire pressures and completed a multipoint inspection. The Vehicle was at the repair facility for two days and had 12,049 miles on the odometer at the time of presentation.

24. As of the filing of this Complaint, the Vehicle continues to suffer from

its defects. To the extent this is relevant for Plaintiff's repair history. Plaintiff has continued to present the Vehicle to Defendant GM's authorized repair facilities after the warranty period to correct defects that GM and its authorized repair facility failed to repair during repair opportunities during the warranty period.

25. GM, through its authorized repair facilities, was given a reasonable number of opportunities to repair the Vehicle but failed to do so. According to the repair records and information available as of the date this Complaint is filed, the Vehicle was out of service for at least seven days. Plaintiff provided GM and its authorized repair facilities at least two opportunities to repair the Vehicle to conform to GM's express warranties.

26. Nothing in this summary of Plaintiff's experiences shall be construed to limit discovery or the inclusion of further complaints or repair presentations not listed above.

## FIRST CAUSE OF ACTION

**Violation of the Song-Beverly Act – Breach of Express Warranty**

**(Against Defendant GM only)**

27. Plaintiff incorporates herein by reference each and every allegation contained in the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

28. Defendant GM expressly warranted that the Vehicle would be free from defects in materials, nonconformity, or workmanship during the applicable warranty period and to the extent the Vehicle had defects, Defendant GM would repair the defects.

29. The Vehicle was delivered to Plaintiff with serious defects and nonconformities under the warranty and developed other serious defects and nonconformities under the warranty, including electrical defects.

30. Pursuant to the Act, Civil Code sections 1790 *et seq.* the Vehicle is subject to the Act and was used for purposes covered by the Act.

31. Plaintiff is a "buyer" under the Act.

32. Defendant GM is a "manufacturer" and/or "distributor" under the Act.

33. The foregoing defects and nonconformities to warranty manifested themselves within the applicable express warranty period. The nonconformities substantially impair the use, value, and/or safety of the Vehicle.

34. Plaintiff delivered the Vehicle to GM and its authorized repair facilities for repair of the nonconformities.

35. Defendant GM and/or DOES 1 through 10, through its authorized repair facilities, was unable to conform the Vehicle to the applicable express warranties after a reasonable number of repair attempts.

36. Notwithstanding Plaintiff's entitlement, Defendant GM has failed to either promptly replace or repurchase the Vehicle in accordance with the Act.

37. By failure of GM to remedy the defects as alleged above, or to repurchase or replace the Vehicle, GM is in breach of its obligations under the Act.

38. Under the Act, Plaintiff is entitled to damages pursuant to Civil Code section 1794, *et seq*.

39. Plaintiff is entitled to recover all incidental and consequential damages pursuant to Civil Code section 1794 *et seq*. and Commercial Code, sections 2714 and 2715, *et seq*.

40. Plaintiff is entitled under the Act to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses and actual attorney's fees reasonably incurred in connection with the commencement and prosecution of this action.

41. Plaintiff is entitled in addition to the amounts recovered, a civil penalty of up to two times the amount of actual damages for GM's failure to comply with its responsibilities under the Act.

42. Plaintiff is entitled to prejudgment interest pursuant to Civil Code section 3287.

## SECOND CAUSE OF ACTION

### Violation of the Song-Beverly Act – Breach of Implied Warranty

### (Against Defendant GM only)

43. Plaintiff incorporates herein by reference each and every allegation contained in the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

44. Defendant GM had reason to know the purpose of the Vehicle at the time of sale of the Vehicle.

45. Defendant GM impliedly warranted that the Vehicle was merchantable pursuant to Civil Code section 1792.

46. The Vehicle was not fit for the ordinary purpose for which such goods are used because it was equipped with electrical defects.

47. The Vehicle was not of the same quality as those generally acceptable in the trade because it was equipped with the defects described above. To the extent relevant, these defects were latent and could not have been identified by Plaintiff before it manifested shortly before the applicable repair presentation. (*Mexia v. Rinker Boat Co. Inc.* (2009) 174 Cal.App.4th 1297.)

48. Plaintiff was harmed, and GM's breach of the implied warranty was a substantial factor in causing Plaintiff's harm.

49. Plaintiff is entitled to justifiably revoke acceptance of the Vehicle under Civil Code, section 1794, *et seq*;

50. Plaintiff hereby revokes acceptance of the Vehicle.

51. Under the Act, Plaintiff is entitled to damages pursuant to Civil Code section 1793.2, *et seq*.

52. Plaintiff is entitled to recover all incidental and consequential damages pursuant to Civil Code section 1794 *et seq*. and Commercial Code, sections 2714 and 2715, *et seq*.

53. Plaintiff is entitled under the Act to recover as part of the judgment a

1  sum equal to the aggregate amount of costs and expenses and actual attorney's fees
2  reasonably incurred in connection with the commencement and prosecution of this
3  action.

4  54. Plaintiff is entitled to prejudgment interest pursuant to Civil Code
5  section 3287.

### THIRD CAUSE OF ACTION

### Violation of the Song-Beverly Act – Section 1793.2

### (Against Defendant GM only)

55. Plaintiff incorporates herein by reference each and every allegation contained in the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

56. Pursuant to the Act, Civil Code section 1793.2, subdivision (a), a manufacturer that sells consumer goods in California, for which it has made an express warranty, shall maintain service and repair facilities or designate and authorize independent service and repair facilities to carry out the terms of those warranties.

57. Pursuant to the Act, Civil Code section 1793.2, subdivision (b), when service and repair of goods is necessary because they do not conform with the applicable express warranties, service and repair shall be commenced within a reasonable time by the manufacturer or its representative.

58. Pursuant to the Act, Civil Code section 1793.2, subdivision (b), goods shall be serviced or repaired so as to conform to the applicable warranties within 30 days.

59. Plaintiff delivered the Vehicle to GM and its authorized repair facilities for repair of the nonconformities.

60. Defendant GM, through its authorized repair facilities, was unable to conform the Vehicle to the applicable express warranties within 30 days.

61. Notwithstanding Plaintiff's entitlement, Defendant GM has failed to

either promptly replace or repurchase the Vehicle in accordance with the Act.

62. By failure of Defendant GM to remedy the defects as alleged above, or to repurchase or replace the Vehicle, Defendant GM is in breach of its obligations under the Act.

63. Under the Act, Plaintiff is entitled to damages pursuant to Civil Code section 1794, *et seq*. (*Ramos v. Mercedes-Benz USA, LLC* (2020) 55 Cal.App.5th 220.)

64. Plaintiff is entitled to recover all incidental and consequential damages pursuant to Civil Code section 1794 *et seq*. and Commercial Code, sections 2714 and 2715, *et seq*. (*Ramos v. Mercedes-Benz USA, LLC* (2020) 55 Cal.App.5th 220.)

65. Plaintiff is entitled under the Act to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses and actual attorney's fees reasonably incurred in connection with the commencement and prosecution of this action.

66. Plaintiff is entitled in addition to the amounts recovered, a civil penalty of up to two times the amount of actual damages for GM's willful failure to comply with its responsibilities under the Act.

67. Plaintiff is entitled to prejudgment interest pursuant to Civil Code section 3287.

## FOURTH CAUSE OF ACTION

### Negligent Repair

### (Against Defendant DUTTON Only)

68. Plaintiff incorporates herein by reference each and every allegation contained in the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

69. Plaintiff delivered the Vehicle to Defendant DUTTON, and/or DOES 31 through 40 for repair.

70. Defendant DUTTON owed a duty to Plaintiff to use ordinary care and

skill in storage, preparation, and repair the Vehicle in accordance with industry standards. This duty exists separate and apart from any contract between Plaintiff and GM, and the economic loss rule does not apply. (*Sw. Forest Indus., Inc. v. Westinghouse Elec. Corp.* (9th Cir. 1970) 422 F.2d 1013, 1020; *North American Chemical Co. v. Sup. Ct.* (1997) 59 Cal.App.4th 764, 777; *see also Robinson Helicopter Co., Inc. v. Dana Corp.* (2004) 34 Cal.4th 979, 988.)

71. Defendant DUTTON breached its duty to Plaintiff to use ordinary care and skill by failing to properly store, prepare and repair the Vehicle in accordance with industry standards. A negligent breach of this duty constitutes a tort.

72. Plaintiff alleges that DUTTON negligently performed the services of storing, preparing, and repairing the Vehicle.

73. Defendant DUTTON owed a duty to Plaintiff per California Business & Professions Code section 9884.8 to record and describe all work on the invoice given to Plaintiff.

74. Defendant DUTTON breached its duty to Plaintiff per California Business & Professions Code section 9884.8 to record and describe all work on the invoices given to Plaintiff. A negligent breach of this duty constitutes a tort.

75. Defendant DUTTON's negligent breach of its duties owed to Plaintiff were a proximate cause of Plaintiff's damages.

76. Plaintiff's negligent repair cause of action against Defendant DUTTON is independent from Plaintiff's Song-Beverly Act causes of action against GM alleged above.

77. As a direct, proximate, and legal result of Defendant DUTTON's negligence, Plaintiff has been harmed in an amount according to proof at trial. Plaintiff's harms, directly and proximately caused by Defendant DUTTON include, but are not limited to, damage to the Vehicle, loss of the Vehicle's use, and emotional distress.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff prays for judgment against Defendants as follows:

1. For general, special and actual damages according to proof at trial;
2. For rescission of the purchase contract and restitution of all monies expended;
3. For compensatory damages;
4. For diminution in value;
5. For incidental and consequential damages according to proof at trial;
6. For civil penalty in the amount of two times Plaintiff's actual, incidental, and consequential damages;
7. For prejudgment interest at the legal rate of 10% per annum;
8. For actual attorney's fees and costs of suit; and
9. For such other and further relief as the Court deems just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

1. Plaintiff hereby demands trial by jury in this action.

Dated: August 16, 2022     **WIRTZ LAW APC**

By: */s/ Richard M. Wirtz*
    Richard M. Wirtz
    Amy R. Rotman
    Attorneys for Plaintiff,
    AMALFI VIAFARA